## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **CHUB CAY, LLC; YOUNG CAY, LLC; SWRI #3, LLC; MONEY CAY, LLC; MIDDLE CAY, LLC; AND SWIFTWATER CAR WASH, LLC,** | § § § § § | |
| **Plaintiffs,** | § § | **Case No. 5:22-cv-00317-FB** |
| **v.** | § § | |
| **BANK OZK,** | § § | |
| **Defendant.** | § § | |

## PLAINTIFFS' AMENDED COMPLAINT AND APPLICATION
## FOR PERMANENT INJUNCTION

Plaintiffs Chub Cay, LLC ("Chub Cay"); Young Cay, LLC ("Young Cay"); SWRI #3, LLC ("SWRI #3"); Money Cay, LLC ("Money Cay"); Middle Cay, LLC ("Middle Cay"); and Swiftwater Car Wash, LLC ("Swiftwater Car Wash") (collectively, the "Plaintiffs"), file this Amended Complaint and Application for Permanent Injunction against Defendant Bank OZK and state the following:

## I.
## PARTIES

1.    Plaintiff Chub Cay is a domestic limited liability company. Its address is 5602 W. Hausman Road, Suite 201, San Antonio, Texas 78249.

2.    Plaintiff Young Cay is a domestic limited liability company. Its address is 5602 W. Hausman Road, Suite 201, San Antonio, Texas 78249.

3.    Plaintiff SWRI #3 is a domestic limited liability company. Its address is 5602 W. Hausman Road, Suite 201, San Antonio, Texas 78249.

1

793797.1

4.     Plaintiff Money Cay is a domestic limited liability company.  Its address is 5602 W. Hausman Road, Suite 201, San Antonio, Texas 78249.

5.     Plaintiff Middle Cay is a domestic limited liability company.  Its address is 5602 W. Hausman Road, Suite 201, San Antonio, Texas 78249.

6.     Plaintiff Swiftwater Car Wash is a domestic limited liability company. Its address is 5602 W. Hausman Road, Suite 201, San Antonio, Texas 78249.

7.     Defendant Bank OZK is an Arkansas financial institution that conducts business in San Antonio, Bexar County, Texas.  Defendant's address is 17901 Chenal Parkway, Little Rock, Arkansas 72223.  Defendant has appeared in this action through its counsel.

## II.
## JURISDICTION AND VENUE

8.     Plaintiffs originally filed this action in Texas state court, as Cause No. 2022CI03499 in the 408th Judicial District, Bexar County, Texas.  Thereafter, Defendant removed this action to this Court on diversity grounds, alleging that the amount in controversy exceeds $75,000 and that there is complete diversity of citizenship between Plaintiffs and Defendant.  *See* Docket No. 1 ¶¶ 3-3.2.

9.     Plaintiffs agree that they seek damages in excess of $75,000, exclusive of interest and costs.  Plaintiffs also seek injunctive relief.

10.    This Court has personal jurisdiction over Defendant because Defendant invoked the Court's jurisdiction by removing this action to this Court.  Furthermore, Plaintiffs' causes of action arise from or are directly related to Defendant's contacts with Texas.  Specifically, Defendant directed its actions and correspondence to

793797.1

Plaintiffs in Texas, Defendant noticed foreclosure sales of Plaintiffs' properties to occur in Texas, said properties are located in Texas, and Defendant's actions in Texas are substantially related to the facts giving rise to this lawsuit. Accordingly, Defendant has sufficient minimum contacts with Texas.

11.    Venue is proper in this Court under 28 U.S.C. § 1441(a) because this district and division embrace the place in which the removed state court action was pending. Specifically, the state court action was pending in the 408th Judicial District Court of Bexar County, Texas, which is within the San Antonio Division of the United States District Court for the Western District of Texas. Defendant has also consented to this venue pursuant to the terms of deeds of trust referenced herein (the "Deeds of Trust").

### III.
### FACTUAL BACKGROUND

12.    Each Plaintiff executed a separate promissory note with Defendant, whereby Defendant loaned each Plaintiff money to purchase real property in Bexar County, Texas (the "Promissory Notes"). Each Plaintiff has different ownership from the others, and the only connection between the Plaintiffs is that Mr. Mark Granados ("Granados") is a partial owner and authorized agent for all of the Plaintiffs. Plaintiffs have asked Defendant if the Promissory Notes are cross-collateralized, but Defendant has failed to respond.

**A.    Defendant misapplied note payments.**

13.    In pertinent part, the Promissory Notes, each of which refer to the respective Plaintiff as "Maker," provide as follows (emphasis added):

793797.1

**MAKER shall have the right and option to prepay all or part of the outstanding principal balance of this note without penalty or premium**; provided, however, that if the principal of this note is prepaid in whole or in part, at any time after the date hereof, all accrued and unpaid interest with respect to such principal amount prepaid is due and payable on the date of such prepayment. **All sums paid hereon shall be applied first to the satisfaction of unpaid and accrued interest, then to the discharge of any expenses for which the holder hereof may be entitled to receive reimbursement under the terms of this note or under the terms of any other document executed in connection herewith and, lastly, to the unpaid principal.**

14.    Granados, as agent for each Plaintiff, was responsible for making the monthly payments for all Plaintiffs' loans.  However, Granados identified the potential for confusion since the same person was making payments for multiple loans from multiple bank accounts.  Accordingly, Granados asked Defendant whether Plaintiffs needed to specify which payments were to be applied to each loan.  In response, Gregory Garner, Defendant's President of Commercial Banking for Austin and San Antonio, stated: "You can send the money to any named entity, and the wire room will ask us how to apply it."  Defendant sent numerous emails to Plaintiffs showing the loan payments due and stating that payments would be applied to all of Plaintiffs' loans.

15.    Despite Defendant's assurances, Defendant failed to apply the payments to all of Plaintiffs' loans.  Instead, Defendant unilaterally and arbitrarily applied the payments to certain loans at the expense of other loans.

16.    As one example of Defendant's misapplication of payments, Defendant unilaterally applied $65,000.00 in collective payments from various bank accounts exclusively to the unpaid principal of Plaintiff Money Cay's loan, instead of applying

the payments to satisfy unpaid and accrued interest for all of Plaintiffs' loans. In doing so, Defendant failed to apply the payments pursuant to the terms of the Promissory Notes and unjustly enriched itself. If Defendant applied the funds to the unpaid accrued interest on Plaintiff Money Cay's loan per the loan terms, then the loan would not be in alleged default. Moreover, the members of Plaintiff Money Cay are distinct from the members of the other Plaintiffs. Thus, some Plaintiffs were especially harmed by Defendant's misapplication of payments and commingling of funds.

17.    Additionally, as another example, Plaintiffs remitted a $60,000.00 payment to Defendant in October 2021, a $15,000.00 payment to Defendant in December 2021, and a $22,500.00 payment to Defendant in January 2022. Plaintiffs have requested an explanation from Defendant as to how such payments were applied. However, Defendant has failed to respond to Plaintiffs' inquiries or otherwise explain how Defendant applied such payments.

18.    Likewise, Plaintiff Young Cay remitted payment to Defendant in January, February, and March 2022 totaling $53,172.70; Plaintiff SWRI #3 remitted payment to Defendant in January, February, and March 2022 totaling $6,014.25; and Plaintiff Money Cay remitted payment to Defendant in January, February, and March 2022 totaling $22,413.12. Again, Defendant has failed to explain how it applied such payments or why, despite those payments, Defendant continues to assert that all Plaintiffs are in default under their respective loans.

793797.1

**B.    Defendant's default notices are deficient.**

19.    Instead of correcting its misapplication of Plaintiffs' payments, explaining how it applied Plaintiffs' payments, or providing an accounting of the funds deposited by Plaintiffs that would enable Plaintiffs to determine the correct balance for each loan, Defendant sent numerous notices to Plaintiffs that declared Plaintiffs to be in default of their payment obligations under the Promissory Notes, accelerated the Promissory Notes, and scheduled foreclosure sales of the properties that Plaintiffs financed through Defendant.

20.    Many such notices, however, contain incorrect information regarding the identity of the particular borrower and the amount of principal, interest, and the balance allegedly owed.  As a result, it is virtually impossible for Plaintiffs to identify the amounts allegedly paid or owed under each of the Promissory Notes.

21.    On February 9, 2022, Granados sent an email to Dale Crowe, Defendant's Vice President/Special Asset Manager, asking for the payoff amount for the loan to Plaintiff Chub Cay.  In response, Mr. Crowe stated: "We will not allow the payoff of Chub Cay alone.  The $65,000 was applied to Money Cay as a principal reduction.  All loans are due and payable in full."  Mr. Crowe's statement clearly violates the terms of the Chub Cay Promissory Note, which permits prepayment of the principal balance of the loan and provides that payments must be applied to the unpaid principal after (1) the satisfaction of unpaid and accrued interest and (2) reimbursement expenses are discharged.  Defendant similarly prevented Plaintiff Middle Cay from prepaying all or part of the outstanding balance of its loan.

793797.1

**C.     Defendant posted Plaintiffs' properties for foreclosure sales.**

22.     On or about January 11, 2022, Defendant sent letters to Plaintiffs entitled "Notice of Acceleration and Foreclosure Notice Delinquent Note."  Attached to the letters were notices removing Defendant's original trustee, appointing Stephanie H. Cook as Defendant's substitute trustee, and scheduling the foreclosure sale of Plaintiffs' properties on February 1, 2022.  Defendant ultimately did not pursue the foreclosure sales scheduled for February 1, 2022.

23.     Then, on or about February 9, 2022, Defendant sent notices of reposted foreclosure sales scheduled for March 1, 2022.  By agreement, Defendant again passed on the foreclosure sales scheduled for March 1, 2022.

24.     Despite that agreement, on or about February 25, 2022, Defendant sent new notices of reposted foreclosure sales to Plaintiffs, stating that Plaintiffs' properties will be auctioned by Ms. Cook, as Defendant's substitute trustee, at foreclosure sales in Bexar County, Texas, on April 5, 2022.

25.     Plaintiffs obtained a temporary restraining order from this Court that prohibited Defendant from proceeding with the foreclosure sales scheduled for April 5, 2022.

**IV.**
**CAUSES OF ACTION**

**A.     First Cause of Action – Breach of Contract.**

26.     All foregoing paragraphs of this pleading are incorporated herein by reference as if set forth verbatim.

27.     The Promissory Notes constitute valid contracts between Plaintiffs and

793797.1

Defendant. Plaintiffs have performed or tendered performance pursuant to the Promissory Notes. However, Defendant has materially breached the terms of the Promissory Notes by misapplying payments thereunder and refusing to allow Plaintiffs Chub Cay and Middle Cay to prepay all or part of the outstanding principal balance of their loans. Defendant's breaches of the Promissory Notes are producing and proximate causes of actual damages to Plaintiffs in an amount within this Court's jurisdictional limits.

28. Plaintiffs are entitled to recover all damages resulting from Defendant's failure to comply with the Promissory Notes, along with prejudgment and post-judgment interest as allowed by law.

**B. Second Cause of Action – Unjust Enrichment.**

29. All foregoing paragraphs of this pleading are incorporated herein by reference as if set forth verbatim.

30. Defendant has obtained a benefit from Plaintiffs by taking an undue advantage of Plaintiffs.

31. Specifically, Defendant has unjustly enriched itself by accepting Plaintiffs' payments and then failing to notify or explain to Plaintiffs how such payments were applied, not applying the payments correctly, alleging Plaintiffs to be in default of their obligations under the loan documents, wrongfully accelerating the maturity dates of the Promissory Notes and Plaintiffs' payment obligations, and seeking to foreclose on Plaintiffs' properties.

32. If Defendant applied Plaintiffs' payments correctly, Defendant would

793797.1

not have a legitimate basis to allege Plaintiffs to be in default of their loan obligations, accelerate the maturity dates of the Promissory Notes and Plaintiffs' payment obligations, or seek to foreclose on Plaintiffs' properties.

**C.    Third Cause of Action – Wrongful Acceleration.**

33.    All foregoing paragraphs of this pleading are incorporated herein by reference as if set forth verbatim.

34.    Proper acceleration of a note requires: (1) notice of intent to accelerate, and (2) notice of acceleration. *Padilla v. Deutsche Bank Tr. Co. Nat'l Ass'n*, No. SA-11-CA-341-OLG(JWP), 2012 U.S. Dist. LEXIS 198558, at *5 (W.D. Tex. Aug. 1, 2012) (citing *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2011)). "Both of these notices must be 'clear and unequivocal.'" *Id.* (quoting *Holy Cross Church*, 44 S.W.3d at 566).

35.    Many of the notices that Defendant sent to Plaintiffs contain incorrect information regarding the identity of the particular borrower and the amount of principal, interest, and balance allegedly owed.  Accordingly, the notices are unclear and, thus, improper. *See id.*

36.    Additionally, Defendant accelerated the maturity dates of the Promissory Notes and Plaintiffs' payment obligations, alleging that Plaintiffs "failed to cure the default under the Note and the Deed of Trust."  However, Plaintiffs are not in default of obligations under the Promissory Notes or Deeds of Trust.  Moreover, Defendant would have no legitimate basis to accelerate the maturity dates of the Promissory Notes or Plaintiffs' payment obligations if Defendant correctly applied

Plaintiffs' payments pursuant to the terms of the Promissory Notes. Defendant's right, if any, to accelerate the maturity dates of the Promissory Notes and Plaintiffs' obligations thereunder has not accrued. Therefore, Defendant's acceleration is wrongful.

## V.
## CLAIM FOR ATTORNEY'S FEES

37.   All foregoing paragraphs of this pleading are incorporated herein by reference as if set forth verbatim.

38.   By virtue of Defendant's failure to comply with the Promissory Notes, Plaintiffs have had to retain the undersigned attorneys to pursue this claim against Defendant. Therefore, pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code, Plaintiffs are entitled to recover a reasonable fee the reasonably necessary services of their attorneys in proceedings before this Court, the United States Court of Appeals for the Fifth Circuit, and the Supreme Court of the United States.

## VI.
## APPLICATION FOR PERMANENT INJUNCTION

39.   All foregoing paragraphs of this pleading are incorporated herein by reference as if set forth verbatim.

40.   In addition to any temporary restraining order and preliminary injunction issued by this Court, Plaintiffs are entitled to a permanent injunction, upon a final hearing, to prohibit Defendant from further misapplying Plaintiffs' payments, commingling Plaintiffs' funds, and attempting to foreclose on or sell

Plaintiffs' properties unless and until this Court determines that Plaintiffs are in default of their loan obligations.

41.    "The standard for issuing a permanent injunction is 'essentially the same' as the standard for issuing a preliminary injunction." *Pham v. Blaylock*, 712 F. App'x 360, 365 (5th Cir. 2017) (quoting *Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 847 (5th Cir. 2004)).  "Instead of proving a substantial likelihood of success on the merits, though, the plaintiff must actually prevail on the merits." *Id.*

42.    "A party seeking a permanent injunction must 'establish (1) success on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest.'" *Stevens v. St. Tammany Par. Gov't*, 17 F.4th 563, 576 (5th Cir. 2021) (quoting *Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, 824 F.3d 507, 533 (5th Cir. 2016)).

43.    As supported by the allegations herein and the anticipated evidence at trial, the permanent injunction requested herein is warranted because (1) Plaintiffs will achieve success on the merits of their claims; (2) a failure to grant the injunction will result in irreparable injury to Plaintiffs; (3) that said injury outweighs any damage that the injunction will cause Defendant; and (4) the injunction will not disserve the public interest.  *See id.*

**A.    Plaintiffs will achieve success on the merits of their claims.**

44.    As stated above, Plaintiffs have asserted causes of action against

Defendant for breach of contract, unjust enrichment, and wrongful acceleration. Each cause of action will be supported by the evidence at trial or summary judgment, and Defendant has no viable defense to any of Plaintiffs' causes of action. Thus, Plaintiffs anticipate that they will prevail on the merits of their claims.

**B.     Plaintiffs will suffer an irreparable injury if a permanent injunction is not issued.**

45.     "To show irreparable injury if threatened action is not enjoined, it is not necessary to demonstrate that harm is inevitable and irreparable." *Humana, Inc. v. Avram A. Jacobson, M.D., P.A.*, 804 F.2d 1390, 1394 (5th Cir. 1986). Instead, "[t]he plaintiff need show only a significant threat of injury from the impending action, that the injury is imminent, and that money damages would not fully repair the harm." *Id.*

46.     It is well-established that money damages are generally not an adequate remedy for losing property rights because real property and its attributes are unique. *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 297 (5th Cir. 2012) (deprivation of interest in real property constitutes irreparable harm).

47.     As a direct and proximate result of Defendant's actions and threatened actions, Plaintiffs will suffer imminent and irreparable injury, including imminent and irreparable injury to the loss of their interests in real and personal properties, for which no remedy at law exists without the protections of injunctive relief, including a permanent injunction. Specifically, if Defendant proceeds with foreclosures sales of Plaintiffs' properties, Plaintiffs, as well as other owners of the improvements, easements, appurtenances, replacements, additions, or fixtures that

793797.1

are a part of Plaintiffs' properties, will lose real properties, personal properties, investments, and equipment in which they have significant equity. Monetary damages at a later time will not adequately compensate Plaintiffs for such losses because Plaintiffs will lose their rights to access and control their properties.

48.    Furthermore, injunctive relief is necessary to prevent Defendant from further misapplying Plaintiffs' payments and commingling Plaintiffs' funds. If injunctive relief is not granted and Defendant continues to misapply Plaintiffs' payments or commingle Plaintiffs' funds, it will be difficult, if not impossible, to identify what Defendant has done with Plaintiffs' payments and the correct balance of each of Plaintiffs' loans. Monetary damages at a later time will not adequately compensate Plaintiffs for such losses because such losses will not be accurately measurable. *See Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 19 (1st Cir. 1996) ("If the plaintiff suffers a substantial injury that is not accurately measurable or adequately compensable by money damages, irreparable harm is a natural sequel."); *Cummins-Allison Corp. v. SBM Co., Ltd.*, 584 F. Supp. 916, 920 (E.D. Tex. 2008) ("The difficulty in arriving at a monetary amount may weigh in favor of an injunction.").

## C.    Plaintiff's injury outweighs any damage that the injunction will cause Defendant.

49.    If the permanent injunction is not issued, Defendant could continue misapplying Plaintiffs' payments and commingling Plaintiffs' funds, forcing Plaintiffs to guess what the correct balance of each loan is and whether any of the loans are in default. Additionally, if the permanent injunction is not issued, Defendant could

continue posting Plaintiffs' properties for foreclosure sales even though the loans would not be in default if Defendant applied Plaintiffs' payments correctly. Either situation would cause significant harm to Plaintiffs.

50.    Conversely, Defendant faces no harm if the permanent injunction is issued because the permanent injunction sought by Plaintiffs is reasonably tailored to protect Plaintiffs specifically from Defendant's wrongful conduct. Plaintiffs do not seek a permanent injunction preventing Defendant from foreclosing on Plaintiffs' properties in all circumstances. Rather, the permanent injunction sought by Plaintiffs is intended to prohibit Defendant from further misapplying Plaintiffs' payments, commingling Plaintiffs' funds, and attempting to foreclose on or sell Plaintiffs' properties unless and until this Court determines that Plaintiffs are in default of their loan obligations.

51.    Thus, considering the balance of hardships between Plaintiffs and Defendant, the permanent injunction should be issued.

**D.    The public would not be harmed by the permanent injunction.**

52.    The permanent injunction sought by Plaintiffs would not adversely affect the public. In fact, the public would benefit from the permanent injunction in several ways.

53.    If the permanent injunction is not issued, Defendant could repost Plaintiffs' properties for foreclosure sales every month for an indefinite time, causing Plaintiffs to request additional temporary restraining orders and injunctive relief, resulting in the frequent use of this Court's time and resources. Issuing the

permanent injunction results in judicial efficiency.

54.    Additionally, if the permanent injunction is issued, Defendant would be prevented from further misapplying Plaintiffs' payments and commingling Plaintiffs' funds.  This should cause Defendant to adopt improved accounting practices, which as a banking institution, can be applied to other borrowers or customers and protect them from the same injuries that Plaintiffs have sustained.

55.    Furthermore, the permanent injunction would prohibit Defendant from wrongfully foreclosing on Plaintiffs' properties.  This should lead to increased confidence of potential bidders and buyers if future foreclosure sales occur.

**E.    The permanent injunction.**

56.    For these reasons, Plaintiffs request that the Court issue a permanent injunction that prevents (1) Defendant; (2) Defendant's officers, agents, servants, employees, and attorneys, including but not limited to, Stephanie H. Cook (as an attorney of record of Defendant and as substitute trustee on the Deeds of Trust in controversy) and Whitley B. Zachary (as an attorney of record for Defendant); and (3) any persons in active concert or participation with any or more of them who receive actual notice of the permanent injunction by personal service or otherwise, from:

    a)    foreclosing, selling, or auctioning Plaintiffs' properties, in whole or in part, unless and until this Court determines that Plaintiffs are in default of their loan obligations;

    b)    attempting to foreclose, sell, or auction Plaintiffs' properties, in whole or in part unless and until this Court determines that

15

Plaintiffs are in default of their loan obligations;

c)    applying Plaintiffs' payments in any way other than pursuant to the express terms of the Promissory Notes, which (i) allow Plaintiffs to "prepay all or part of the outstanding principal balance without penalty or premium" and (ii) require Defendant to apply all payments "first to the satisfaction of unpaid and accrued interest, then to the discharge of any expenses for which [Defendant] may be entitled to receive reimbursement" under the loan documents "and, lastly, to the unpaid principal"; and

d)    commingling Plaintiffs' funds.

## VII.
## CONDITIONS PRECEDENT

57.    Plaintiffs aver that all conditions precedent to the filing of this action and the granting of the relief requested herein have been performed or have occurred.

## VIII.
## PRAYER

For the reasons stated above, Plaintiffs respectfully request that it be awarded judgment against Defendant for:

a.    actual damages;

b.    injunctive relief as set forth above;

c.    an accurate and complete accounting of each of the Promissory Notes;

d.    pre-judgment and post-judgment interest at the maximum rate permitted by law on all sums awarded to Plaintiff;

793797.1

e.    attorneys' fees, court costs, and expenses through trial and all appeals; and

f.    any other or further relief, at law or in equity, to which Plaintiff is justly entitled.

Respectfully submitted,

*/s/ Stephen K. Lecholop II*
Stephen K. Lecholop II
State Bar No. 24070119
Christopher A. Wright
State Bar No. 24082114
ROSENTHAL PAUERSTEIN
SANDOLOSKI AGATHER LLP
755 East Mulberry, Suite 200
San Antonio, Texas 78212
Telephone: (210) 225-5000
Facsimile: (210) 354-4034
Email: slecholop@rpsalaw.com
Email: cwright@rpsalaw.com

**ATTORNEYS FOR PLAINTIFFS**

17

793797.1

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served via the

CM/ECF system on the following counsel of record on April 11, 2022:

> Stephanie H. Cook
> Whitley B. Zachary
> COKINOS | YOUNG, PC
> 900 S. Capital of Texas Highway, Suite 425
> Austin, Texas 78746
> scook@cokinoslaw.com
> wzacahary@cokinoslaw.com
> *Attorneys for Defendant*

> */s/ Christopher A. Wright*
> Christopher A. Wright

793797.1